IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 14, 2013 Session

**STATE OF TENNESSEE v. AMBER R. GALEMORE**

**Direct Appeal from the Circuit Court for Montgomery County
Nos. 41101226, 41200139   John H. Gasaway, Judge**

———————

**No. M2012-01783-CCA-R3-CD - Filed August 29, 2013**

———————

In two separate cases, the Defendant, Amber R. Galemore, pled guilty to possession with intent to sell or deliver cocaine and to theft of property. She was sentenced to an effective sentence of eight years on probation. As part of the Defendant's plea agreement, she reserved a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2). The question is articulated in the record as, "Whether the search warrant issued by a General Sessions Judge for Montgomery County, Tennessee, which was based on statements of an unknown person outside the defendant's residence and computer keystroke software results[,] provided a sufficient nexus to make a probable cause determination." After reviewing the record and applicable law, we conclude that the trial court did not err when it denied the Defendant's motion to suppress. Accordingly, we affirm the Defendant's convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which ROGER A. PAGE, J., joined. CAMILLE R. MCMULLEN, J., concurring in results only.

Chase T. Smith, Clarksville, Tennessee, for the Appellant, Amber R. Galemore.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Senior Counsel, Criminal Justice Division; John W. Carney, Jr., District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I. Facts**

This case arises from a burglary that occurred on March 8, 2011. After an investigation, police sought, obtained, and executed a search warrant on the Defendant's home. After execution of the search warrant, a Montgomery County grand jury indicted the Defendant in two separate cases. In case number 41101226, the Defendant was indicted for possession with intent to sell or deliver cocaine, hydrocodone, and oxycodone and for possession of a firearm during the commission of a dangerous felony. In case number 41200139, the Defendant was indicted for theft of property valued over $1,000 and making a false report to authorities.

## A. Motion to Suppress

The Defendant filed a motion to suppress the evidence police obtained as a result of the search of her residence. She contended that there was no nexus between the computer stolen during the burglary and the Defendant's residence. Rather, the search warrant was obtained on a mere "hunch" that the computer would be in the residence, which did not pass constitutional standards.

The trial court held a hearing on the motion, during which the parties based their arguments solely on the search warrant itself. The affidavit supporting the warrant, which was admitted as an exhibit at trial, stated:

On March 8, 2011 Anita Pitts reported that unknown person(s) forced entry into her residence, located at . . . . Clarksville, TN, and removed several of her personal items, to include Apple I-Pod Touch, . . . X-Box Harddrive 250 GB; . . . Raider's silver pocket watch; Del Inspiron 1525 Laptop; Kodak Easy Share Digital Camera . . . . These items were taken without Anita Pitts['] consent.

On March 9, 2011[,] Anita Pitts contacted "Absolute Computrace" which is [a] "Lo Jack" for computers. It's a program that was downloaded to this computer when it was purchased. Pitts provided the case number that she was given for her aggravated burglary report to Absolute Comput[r]ace. Absolute Computrace at some point then began the track on her computer.

Absolute Computrace is able to track the computer by capturing the keystrokes of the person typing on the computer. The keystroke logger also captures usernames and passwords[,] which is stored on Absolute Software servers.

On March 16, 2011[,] Detective Kevin Rushing of the Clarksville Police

Department received an email from Absolute Computrace. The email contained the investigative report from Absolute Computrace[,] and it showed that "Amber Galemore" had logged onto "Facebook" using the email account of [ambergalemore@yahoo.com.](mailto:ambergalemore@yahoo.com) Absolute Computrace researched the email address and name[,] then located the address of 1481 Buchanon Drive, Clarksville, TN for Amber Galemore. Absolute Computrace then attempted to access Amber Galemore's Facebook page[,] which is public access, but was unable to unless you were added as a "friend" to her Facebook page. There was a picture on the public access page [that] contained the name Amber Galemore next to it.

The name Amber Galemore was then entered into the "Criminal Justice Portal[,]" which is a Tennessee driver's license data base computer program. The search revealed Amber Rose Galemore, DOB: 04/03/1982, social security number [XXX]-[XX]-[XXXX], driver's license number [XXXXXXXXX], residing at 1481 Buchanon Drive, Clarksville, TN. The search also provided Amber Rose Galemore's drivers['] license picture[,] which was identified by Detective Kevin Rushing as the same person in the picture on Amber Galemore's Facebook page.

Detective Kevin Rushing then checked with Clarksville Department of Electricity and was advised that Amber Harris is on the account for 1481 Buchanon Drive, Clarksville, TN[,] and has had power at that address since October 2010. Amber Harris had provided them a DOB: 04/03/1982, [the same social security number as identified with Amber Galemore], [the same driver's license number as identified with Amber Galemore], which leads your affiant to believe Amber Rose Galemore and Amber Harris are the same person.

Your affiant has worked with Absolute Computrace in the past and successfully recovered a computer that was stolen in an aggravated burglary. With this information provided by Absolute Computrace[,] your affiant believes that the computer will be recovered, along with other stolen property[,] and the property will be returned to its owner.

On March 18, 2011[,] your affiant made contact with Amber Galemore at 1481 Buchanon Drive and requested to look for the computer in her residence. An unknown black male who was present at the time of the request stated that the computer was inside but stated the affiant could not go inside to retrieve it.

The Defendant contended that this affidavit did not provide probable cause to search her residence for several reasons. First, the tracking software enabled by Absolute Computrace was not GPS oriented, and therefore, she could have been anywhere, not necessarily her home, when she logged into the computer. She argued that she could have simply been typing on the computer of a "friend." Therefore, the Defendant contended, there was nothing that pinpointed the actual location of the computer so as to provide a nexus between the criminal activity associated with this computer and the house at Buchanon drive.

The Defendant further contended that the "unknown black male" who was present at the time of the detective's request for the computer had no basis of credibility. There was no evidence he had direct knowledge that the computer was in the house.

The State countered that there was a sufficient nexus between the address and the criminal activity. The affidavit stated that Amber Galemore used the computer, and police went to the address of Amber Galemore, where she answered the door. A man there said that the computer was in the home but that police could not retrieve it. This supported the theory that the computer would be found in the home.

The trial court took the matter under advisement and then held a second hearing. At the second hearing, the court stated:

> [P]art of my ruling is that I . . . do not accept the statement made by the unknown black male as corroboration. What he said may or may not have been true, and there's no way to know whether what he said was true or not, or had any reliability at all, because it doesn't even tell us who he is. It's like this person just said it and then left . . . who was that guy? And so I don't think that what he said has anything to do with whether the search warrant is constitutionally . . . sound.

The trial court denied the motion to suppress, stating:

> That was the other thing that . . . I'm glad you said what you did, because there was not a long passage of time here. The Computrace information that was sent to Detective Rushing was done on March 16, and the officer went to her house on the 18th. The closer in time you get[,] the stronger your argument is. If they had said on the 16th we think it's a person named Amber Galemore, she lives on Buchanan Place, then I think the argument is real – a lot stronger. Whether passage of two days weakens it or not, I guess is for an appellate court to decide.

-4-

I'm denying the suppression motion. I'm finding that there was sufficient information, properly gathered[,] to establish a nexus between the location . . . indicated by the search warrant as the likely place of this stolen property, and I beg you to take it up on appeal.

The trial court then issued a written order denying the Defendant's motion to suppress.

### B. Guilty Plea Hearing

After the trial court denied her motion to suppress, the Defendant entered a guilty plea, reserving a certified question of law. In case 41101226, the Defendant pled guilty to one count of possession with intent to sell or deliver over .5 grams of a Schedule II drug. The other three counts against her were dismissed. The trial court sentenced the Defendant to eight years at 30%, which was suspended and to be served on probation. In case 41200139, the Defendant pled guilty to theft of property, and the false report charge was dismissed. The trial court sentenced the Defendant to two years at 30%, which was suspended and to be served on probation. The trial court ordered that the two sentences run concurrently, for an effective sentence of eight years.

The trial court's order articulated the certified question reserved by the Defendant.

### II. Analysis
### A. Certified Question of Law

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the question presented is dispositive. The question is dispositive "when the appellate court 'must either affirm the judgment [of conviction] or reverse and dismiss [the charges].'" *State v. Dailey*, 235 S.W.3d 131, 134 (Tenn. 2007) (alterations in original) (quoting *State v. Walton*, 41 S.W.3d 75, 96 (Tenn. 2001); *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984)). An issue is never dispositive when this Court may exercise the option to reverse and remand. *Wilkes*, 684 S.W.2d at 667. This Court "'is not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question of law is dispositive of the case.'" *Dailey*, 235 S.W.3d at 134-35 (quoting *State v. Thompson*, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003)). This Court must make an independent determination that the certified question is dispositive. *Id.* at 135 (citing *State v. Preston*, 759 S.W.2d 647, 651 (Tenn. 1988)).

An appeal lies from any judgement of conviction upon a plea of guilty if the defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved with the consent of

the State and the court the right to appeal a certified question of law that is dispositive of the case. Tenn. R.Crim. P. 37(b)(2); *see Preston*, 759 S.W.2d at 650. Further, the following are prerequisites for an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

> (i) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law reserved by the defendant for appellate review;
>
> (ii) The question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
>
> (iii) The judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial judge; and
>
> (iv) The judgment or document reflects that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R.Crim. P. 37(b)(2)(A)(i)-(iv).

In the case under submission, the Defendant's issue on appeal meets these requirements. She pled guilty; the judgment form referenced the attached certified question; and the addendum to the judgment form listed the question that the Defendant maintains on appeal:

> Whether the search warrant issued by a General Sessions Judge for Montgomery County, Tennessee[,] which was based on statements of an unknown person outside the defendant's residence and computer keystroke software results[,] provided a sufficient nexus to make a probable cause determination.

We agree that the question included in the addendum attached to the judgment form against the Defendant is dispositive of the case. Thus, we conclude that the issue is properly before this Court.

### B. Validity of Search Warrant

The Defendant contends that the warrant failed to provide a sufficient nexus between the residence sought to be searched and criminal activity. The Defendant points out that she

could have logged into the laptop computer from anywhere, and not only from her residence, making the warrant insufficient to provide a nexus between her home and the criminal activity. She further contends that the information in the warrant was "stale" because two days had passed between the time Computrace said she logged into her accounts on the computer and the time the officer went to her residence. The State counters that the affidavit showed that the Defendant was in recent possession of one of the items stolen during the burglary, namely the laptop. This, along with the other evidence, provided a sufficient nexus to the Defendant's home. The State further asserts that the information was not stale under the facts of this case.

"This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise." *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Our review of a trial court's application of law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). When the trial court's findings of fact are based entirely on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions, and the trial court's findings of fact are subject to de novo review. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000).

We begin our analysis with review of the Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, which provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, will not be violated, and no warrants will issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Similarly, article I, section 7 of the Tennessee Constitution provides:

[P]eople shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offenses are not particularly described and supported by evidence, are dangerous to liberty and not to be granted.

Tenn. Const. art. I, § 7.

"As a general rule, a search warrant shall be issued only on the basis of an affidavit, sworn before a 'neutral and detached' magistrate, which establishes probable cause for its issuance." *State v. Stevens*, 989 S.W.2d 290, 293 (Tenn. 1999) (quoting *State v. Jacumin*, 778 S.W.2d 430, 431 (Tenn. 1989) and *State v. Moon*, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992)). A showing of probable cause generally requires "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." *State v. Johnson*, 854 S.W.2d 897, 899 (Tenn. Crim. App. 1993) (citing *Lea v. State*, 181 S.W.2d 351, 352 (Tenn. 1944)).

An affidavit establishing probable cause is an indispensable prerequisite to the issuance of a search warrant. *See, e.g.*, T.C.A. § 40-6-103; Tenn. R. Crim. P. 41(c); *State v. Sales*, 393 S.W.3d 236, 240 (Tenn. Crim. App. 2012). Such probable cause "must appear in the affidavit [itself] and judicial review of the existence of probable cause will not include looking to other evidence provided to or known by the issuing magistrate or possessed by the affiant." *Id.* (citing *Moon*, 841 S.W.2d at 338; and *State v. Henning*, 975 S.W.2d 290, 295 (Tenn. 1998)). To sufficiently make a showing of probable cause, an affidavit "must set forth facts from which a reasonable conclusion might be drawn that the evidence is in the place to be searched." *State v. Smith*, 868 S.W.2d 561, 572 (Tenn. 1993). However, a decision regarding the existence of probable cause requires that the affidavit contain "more than mere conclusory allegations by the affiant." *Stevens*, 989 S.W.2d at 293; *see also Moon*, 841 S.W.2d at 338.

An affidavit must show a nexus between the criminal activity, the place to be searched, and the items to be seized in order to give a magistrate probable cause to issue a warrant. *State v. Reid*, 91 S.W.3d 247, 273 (Tenn. 2002); *Smith*, 868 S.W.2d at 572. When the affidavit contains no direct evidence of such a nexus, "we must . . . determine whether it was reasonable for the magistrate to infer that the item of contraband listed in the affidavit would be located" in the place to be searched. *State v. Saine*, 297 S.W.3d 199, 206 (Tenn. 2009).

The Tennessee Supreme Court has stated that "Tennessee law is clear that in determining whether or not probable cause supported issuance of a search warrant only the information contained within the four corners of the affidavit may be considered." *Keith*, 978 S.W.2d at 870 (citing *Jacumin*, 778 S.W.2d at 432). This language refers to a trial court's

determination of whether the warrant itself is valid. A finding of probable cause made by an issuing magistrate is entitled to great deference. *State v. Yeomans*, 10 S.W.3d 293, 296 (Tenn. Crim. App. 1999) (citing *State v. Melson*, 638 S.W.2d 342, 357 (Tenn. 1982)). Therefore, the standard to be employed in reviewing the issuance of a search warrant is "whether, in light of all the evidence available, the magistrate had a substantial basis for finding probable cause." *State v. Meeks*, 876 S.W.2d 121, 124 (Tenn. Crim. App. 1993).

After a careful review of the search warrant in this case, we conclude that there was a substantial basis for finding probable cause. We find unpersuasive the Defendant's argument that she "could have" logged onto her Facebook account from anywhere a laptop could travel, and not necessarily at her home; therefore, there was no nexus to her home. The Defendant herself was in possession of the laptop, stolen property, when Comptrace tracked her logging into her online accounts using the laptop. While the laptop was portable, it was reasonable to infer that the Defendant retained possession of it. The officers learned the Defendant's address and went to that address. Someone at her home said that a laptop was inside but that the officer could not retrieve it. The officer left and, on this basis, applied for a search warrant. Under these circumstances, it was reasonable for the magistrate to infer that the laptop would be located in the Defendant's residence. We conclude that the trial court did not err when it denied the Defendant's motion to suppress. The Defendant is not entitled to relief.

## II. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the trial court properly denied the Defendant's motion to suppress. Accordingly, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE